UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PAUL CHIME, Individually and on Behalf of All
Other Persons Similarly Situated,

                                Plaintiff,

           - v -

PEAK SECURITY PLUS, INC. and
EMMANUEL OSULA, Jointly and Severally,

                         Defendants.
-----------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

CV-13-470 (WFK)(VVP)

POHORELSKY, Magistrate Judge:

       Currently pending before the court are motions by both the plaintiff and the
defendants concerning the Second Amended Class Action Complaint ("SACAC").  The
SACAC's principal allegations are that the defendants failed to provide the plaintiff (as well
as other similarly situated employees of the defendants) overtime premiums for hours
worked in excess of forty per week, and did not compensate him for work performed "off-
the-clock," in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor
Law ("NYLL").  The defendants have moved to dismiss the SACAC, pursuant to Fed. R.
Civ. P. 12(b)(6).  The plaintiff, on the other hand, has moved for conditional certification of
a collective action with respect to the FLSA claims, and for class certification with respect to
the NYLL claims.  The Honorable William F. Kuntz has referred all of the motions to me
for a report and recommendation.  For the reasons that follow, I recommend that the
defendants' motion be denied, and that the plaintiff's motions be granted.

## I.    BACKGROUND

       Plaintiff Paul Chime ("Chime") initiated this action by filing his initial complaint on
January 28, 2013.  An amended complaint was filed on April 12, 2013, which the defendants
then moved to dismiss.  Several months thereafter, the plaintiff moved for conditional
collective and class certification.  The plaintiff then sought, and was granted, leave to file a

second amended complaint, which he did in June 2014.  The defendants now move to dismiss the Second Amended Class Action Complaint ("SACAC") for failure to state a claim.

According to the SACAC, Chime was employed as a security guard by defendant Peak Security—of which defendant Emmanuel Osula is President and Chief Executive Officer—from September 2009 through November 2011.  During this time, Chime's regular work schedule consisted of five eight-hour shifts per week, for a total of forty hours per week.  The plaintiff alleges, however, that he (and the class and collective action members) often worked in excess of forty hours per week.  This primarily occurred as a result of three discrete conditions.  First, security guards were asked to cover a co-worker's shift, resulting in that guard working six to eight hours beyond his regular weekly schedule.  Second, pursuant to the defendants' policy that guards must arrive at their posts at least fifteen minutes before their shifts began, Chime worked approximately fifteen extra minutes for each shift.  Finally, Chime allegedly worked extra hours when his co-workers failed to arrive in time for their scheduled shifts.  This occurred as a result of the defendants' policy that guards were not permitted to leave their post until they were relieved.[1]

The crux of the plaintiff's allegations is that, despite knowing that Chime and similarly situated employees were working in excess of forty hours per week, the defendants did not compensate them accordingly.  The claim has several components: (1) that defendants did not pay Chime (and upon information and belief, the class and collective action members) the overtime premium of one-and-a-half times their regular hourly rate; (2) that the defendants did not compensate its workers *at all* for hours worked beyond forty per week; and (3) that the defendants paid for hours worked in excess of forty, but paid only $9.00 per hour for overtime work, as opposed to $12.00 per hour for work during regularly scheduled shifts.  The plaintiff also alleges that the defendants failed to provide adequate wage statements.

---

[1] Chime also alleges that once every two weeks he was directed to arrive an hour or more before his shift was scheduled to start.

2

Chime has brought five claims against the defendants. The first two are brought pursuant to the FLSA, one for unpaid overtime (which appears to correspond with the allegations that the defendants failed to pay overtime premiums or paid less than the normal rate of $12.00 per hour) and the other for unpaid "off-the-clock" work (which presumably relates to the allegations that the defendants did not compensate the plaintiff at all for overtime hours worked). Two largely similar claims are brought pursuant to the NYLL, along with a claim for recordkeeping violations. Relying on "personal observations," Chime alleges that he is aware of at least 100 other potential collective and class action members. Accordingly, his FLSA claims are brought as a collective action pursuant to 29 U.S.C. § 216(b), and his NYLL claims are brought as a class action under Fed. R. Civ. P. 23.

## II. DEFENDANTS' MOTION TO DISMISS

### A. Introduction

Although not organized as such, the defendants' motion essentially proceeds on four substantive grounds for dismissal of the plaintiff's FLSA claims. They argue that the SACAC fails to allege that Chime is covered by the FLSA, that the statute of limitations renders plaintiff's FLSA claims time-barred, that some of the work for which the plaintiff seeks compensation is non-compensable under the FLSA, and that the SACAC generally fails to state a cause of action. In addition, the defendants argue that the NYLL claims should be dismissed for lack of supplemental jurisdiction. The court finds no merit in any of the defendants' arguments for dismissal.

### B. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[2] tests the legal, not the factual, sufficiency of a complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one."), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.

---

[2] The defendants have moved pursuant to Rule 12 generally, but their arguments proceed on what appear to be Rule 12(b)(6) grounds for dismissal.

2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'") (*quoting Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)) (prior citations omitted).  The court must therefore accept the complaint's allegations as true, and draw all reasonable inferences in the plaintiff's favor.  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  In deciding the motion, the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *ATSI Commc'ns, Inc. v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir. 2007).  Courts may also consider matters subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) (citing 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004 and Supp. 2007)).

The Supreme Court clarified the pleading standard in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).  In *Twombly*, the Court explicitly retired the familiar rule from *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," 355 U.S. 41, 45-46 (1957), declaring that the "no set of facts language has been questioned, criticized, and explained away long enough," *Twombly*, 550 U.S. at 546. *Twombly* held that to avoid dismissal, plaintiffs must plead facts that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring factual allegations that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

*Twombly* explicitly rejected, however, a blanket requirement of heightened fact pleading, and the Court's more recent decision in *Erickson v. Pardus* reaffirmed that the notice pleading standard still determines legal sufficiency as a general matter.  551 U.S. 89, 93-94 (2007) (per curiam).  Accordingly, the Second Circuit has interpreted "[t]hese conflicting signals" as "not requiring a universal standard of heightened fact pleading, but . . . instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with

4

some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

### C.  Coverage Under the FLSA

In order to recover under the FLSA, a plaintiff must demonstrate that he is either personally "engaged in [interstate] commerce or in the production of goods for commerce, or is employed in an enterprise engaged in [interstate] commerce or in the production of goods for [interstate] commerce."  29 U.S.C.§ 206(a), 207(a); *see, e.g.*, *Shim v. Millennium Grp.*, No. 08 Civ. 4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009) (quoting 29 U.S.C. §§ 206(a), 207(a) and citing *Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 257-58 (E.D.N.Y. 2007)).  The SACAC plainly alleges that Peak Security is an enterprise engaged in commerce or in the production of goods for same, in that, *inter alia*, its employees handle goods and materials (*e.g.* log books, uniforms, and walkie-talkies) that have been produced for and moved in commerce.  *See* SACAC at ¶ 8.  This suffices to raise the prospect of Chime's recovery under the FLSA, because "as long as the employer achieves an annual gross business volume of $500,000 or more, *all* of the employer's employees are covered under the Act as long as at least *some* handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce."  *Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11 Civ. 1021, 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012) (citing 29 U.S.C. § 203(s)(1)(A)(i)-(ii)).  To this end, in *Jones*, where the plaintiff alleged that the defendant's gross revenues exceeded $500,000 and that the defendant "had employees who handled materials that had moved in interstate commerce, such as uniforms, walkie-talkies, and flashlights," *see id.*, the court concluded that "[t]hese allegations suffice to bring [plaintiff] within the FLSA's overtime provisions."  *See id.*  Because the operative allegations here are essentially identical, *see* SACAC at ¶ 8, we reach the same conclusion.

This holding is consistent with those commonly found in the present context.  *See Nichols v. Mahoney*, 608 F. Supp. 2d 526, 548 (S.D.N.Y. 2009) ("[V]irtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.") (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)); *Zhong v. August*

5

*August Corp.*, 498 F. Supp. 2d 625, 629 (S.D.N.Y. 2007) (requirement satisfied where plaintiff merely "alleged that [a]t all times relevant to this action, Defendant was an enterprise covered by the FLSA as defined by" portion of FLSA that "outline a definition of 'enterprise' that encompasses any entity that is 'engaged in commerce or in the production of goods for commerce'") (internal quotation marks omitted). The cases cited by the defendants involved complaints beset by flaws that are absent here, *see, e.g.*, *Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11 Civ. 1021, 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28, 2012) (plaintiff provided no factual support for assertions regarding commerce), *report and recommendation adopted*, No. 11 Civ. 1021, 2012 WL 909825 (E.D.N.Y. Mar. 16, 2012), and therefore do not compel a contrary conclusion. The argument that the SACAC's allegations of defendants' commercial activities fail to place Chime within the FLSA's purview should therefore be rejected.

>    **D.    Statute of Limitations**

The FLSA provides a statute of limitations of two years from the date a cause of action accrues, except for willful violations, in which case the statutory period is extended to three years. *See* 29 U.S.C. § 255(a). The threshold question for determining the timeliness of the plaintiff's claims, then, is whether the plaintiff has pleaded a willful violation of the FLSA. A willful violation occurs when an employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the FLSA. *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); citing *Herman v. RSR Sec. Svcs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999)). The employee bears the burden of demonstrating willfulness. *Id.* (citing *Herman*, 172 F.3d at 141). Courts considering this question on motions to dismiss tend to favor findings of willfulness. The court in *Goodman v. Port Auth. of New York & New Jersey*, 850 F. Supp. 2d 363 (S.D.N.Y. 2012), for example, wrote that "[w]hether or not a violation of the FLSA is 'willful' is a fact-intensive inquiry not appropriately resolved on a motion to dismiss," and accordingly denied a motion to dismiss claims occurring between two and three years before the filing of the complaint. *See id.* at 381; *see also Alvarez v. IBM Restaurants Inc.*, 839 F. Supp. 2d 580, 587-88 (E.D.N.Y. 2012) ("Courts in this circuit have generally held that where

willfulness is in dispute, a three-year statute of limitations applies at the conditional certification stage.") (citing *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 399 (E.D.N.Y. 2011)).

To this end, plaintiffs may allege willfulness in general terms and nonetheless meet their burden of demonstrating a willful violation of the FLSA in order to avail themselves of the three-year statute of limitations. *See, e.g.*, *Neil v. Sidney W. Barbanel Consulting Eng'r LLC*, No. 12 Civ. 4061, 2014 WL 3907909, at *2 (E.D.N.Y. Aug. 11, 2014) (at motion to dismiss stage, general assertion of willfulness satisfactory for purposes of invoking three-year statute of limitations) (citing *Moran v. GTL Const., LLC*, No. 06 Civ. 168, 2007 WL 2142343, at *4 (S.D.N.Y. July 24, 2007)).   Chime has satisfactorily done so.   First, the SACAC makes several general averments of willfulness, which are sufficient to invoke the three-year statute of limitations under the FLSA.   *See Litras v. PVM Int'l Corp.*, No. 11 Civ. 5695, 2013 WL 4118482, at *6 (E.D.N.Y. Aug. 15, 2013) (citing *Moran*, 2007 WL 2142343 at *4).   In relevant part, it states that (1) defendants were aware of, and "knowingly and/or recklessly" disregarded their obligations to pay overtime premiums; (2) defendants wilfully violated the FLSA by knowingly and intentionally failing to pay overtime wages; and (3) defendants' willful violations warrant a three-year statute of limitations.   *See* SACAC at ¶¶ 75, 85, 88.

Moreover, although the SACAC does not offer much by way of specific allegations of willfulness, it does suggest defendants' knowledge or reckless disregard of their conduct being violative of the FLSA.   Chime alleges, for example, that he discussed with his manager that he had not been paid overtime, *see id.* at ¶ 67, and that the defendants advised Chime and other employees that the company was unable to pay the owed overtime because they lacked cash on-hand, *see id.* at ¶ 64.   These allegations provide further support for the notion that the defendants wilfully violated the FLSA.   Although the plaintiff does not expressly allege the defendants' awareness of their FLSA violations, as noted, he need not do so; instead, his general averments of willfulness, coupled with these events suggesting knowledge, more than suffice.   *Compare Zubair v. EnTech Eng'g P.C.*, 900 F. Supp. 2d 355, 360 (S.D.N.Y. 2012) (defendants that comprised a small business without in-house counsel found to be

"genuinely ignorant of the applicable laws governing overtime compensation" for purposes of willfulness).

In light of the above, a three-year statute of limitations governs plaintiff's claims. Because this matter was initiated with the filing of the original complaint on January 28, 2013, Chime's claims are timely if they are found to accrue after January 28, 2010.  An FLSA action for unpaid overtime accrues "when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."  29 C.F.R. § 790.21; *see also Hosking v. New World Mortgage, Inc.*, 602 F. Supp. 2d 441, 446 (E.D.N.Y. 2009) ("[F]or the purposes of establishing the statute of limitations under the FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period.") (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006) and citing 29 C.F.R. § 790.21(b)).

Under these standards, plaintiff's FLSA claims are timely pleaded.  The SACAC expressly alleges that Chime worked six or more eight-hour shifts in weeks commencing on January 24, July 25, August 2, August 9, and December 19 of 2010; and August 28, 2011.[3] *See* SACAC at ¶ 39.  With the possible exception of the week of January 24, 2010, all of these dates fall within the statutory period.  As to the plaintiff's other primary FLSA allegations—that defendants did not compensate them for time worked before or after their designated shifts—the SACAC does not assign a date to these alleged infractions, nor do the defendants argue that this practice occurred only before January 28, 2010.  Because, however, Chime was employed by the defendants until November 13, 2011, and in light of the court's duty at this stage to draw all inferences in plaintiff's favor, there is no basis to conclude (nor do defendants argue) that this practice ceased more than three years before the

---

[3] The court notes that the August 28, 2011 date was absent from the First Amended Complaint.  The plaintiff explains that this date was inadvertently omitted from the prior pleading and added here to emphasize the timeliness of Chime's claims.  The court is satisfied with this explanation, and, in any event, is unmoved by defendants' argument to the contrary, since almost all of the other dates expressly pleaded in the SACAC are likewise within the statutory period.

filing of the initial Complaint.  Accordingly, the plaintiff's claims are timely pleaded and the defendants' argument that the FLSA claims are time-barred should be rejected.

> ### E.      Whether the Time Sought is Compensable

The defendants also argue that the plaintiff fails adequately to allege that the time spent before and after Chime's work shifts is compensable.  An employee may recover for any time spent on activities that "constitute 'an integral and indispensable part of the principal activity of the employment.'" *See Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 144 (2d Cir. 2012) (quoting *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) and citing *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 717-18 (2d Cir. 2001)). Defendants rely on two theories to categorize Chime's pre-and post-shift activities as "not integral and indispensable" and therefore "not compensable under the FLSA." *Id.* at 144-45 (citing *Gorman v. Consol. Edison Co.*, 488 F.3d 586, 591-95 (2d Cir. 2007)).  Neither is persuasive.

First, the defendants seek to eliminate that aspect of the plaintiff's claim that, in their view, rests on non-payment for time spent by employees while they "don and doff" their uniforms prior to their shift.  See Defendants' Brief in Support at p. 8.  Time spent donning and doffing uniforms is not compensable, they argue, and therefore cannot support a claim for unpaid wages.  The plaintiff correctly counters, however, that he has not asserted an FLSA claim for time spent donning and doffing uniforms, and accordingly the court need not address whether or not such activities are compensable.[4]  *Cf., IBP, Inc. v. Alvarez*, 546 U.S. 21, 42 (2005) (excluding from scope of FLSA time spent waiting to don first piece of gear that marks beginning of workday).

Defendants' other argument relies solely upon *Albrecht v. Wackenhut Corp.*, 379 F. App'x 65 (2d Cir. 2010), a Second Circuit case which considered whether security guards could be compensated under the FLSA for time spent obtaining and returning firearms and

---

[4] It goes without saying that the court likewise rejects the notion impliedly advanced by the defendants that the time spent donning and doffing uniforms constitutes the "central point in plaintiff's lawsuit."  *See* Defendants' Brief in Support at p. 8.

radios.  *See id.* at 67.  The court answered this question in the negative, but not because activities occurring before and after work shifts are necessarily non-compensable.  Instead, the court's "critical inquiry [ ] focuse[d] more narrowly on the time spent obtaining/returning the firearm and radio"; specifically, the court asked whether the time spent performing these activities was de minimis.  *See id.* (citing cases).  Its conclusion rested upon the fact that the plaintiffs spent 30-90 seconds on these tasks, an amount of time held to be de minimis, and therefore non-compensable.  *See id.*

*Albrecht* in fact militates *against* the defendants' position.  The court there was faced with statements in the plaintiffs' affidavits that they (like Chime) were required to report to an assigned post fifteen minutes before their shift began.  Although the court denied the plaintiffs recovery for such time, its decision rested solely on procedural grounds—by not making such allegations in their complaint, the plaintiffs had waived this argument.  The court made clear that had the plaintiffs made such allegations—as did the plaintiff here—"[s]uch waiting may well be compensable."  *See id.* at 68 (quoting *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 651 (2d Cir. 1995)) ("To be sure, on occasions, courts have found that compensable work can occur despite absence of exertion, where, for example, employees have been required to stand by and wait for the employer's benefit.").  In sum, the defendants' arguments that the plaintiff is not entitled to compensation for time spent before the beginning of his assigned shifts lack merit.[5]

Finally, the defendants attack plaintiff's attempt to seek recovery for time spent during training seminars, for which defendants allegedly deducted $40.00 from plaintiff's wages, resulting in the plaintiff not being paid for this time.  *See* SACAC at ¶ 69.  Time spent in training is generally considered compensable under the FLSA," *see, e.g., Wolman v. Catholic Health Sys. of Long Island*, 853 F. Supp. 2d 290, 304 (E.D.N.Y. 2012) (citing *Chao v. Tradesmen Int'l*, 310 F.3d 904, 907 (6th Cir. 2002)), *aff'd in part, rev'd in part on other grounds sub nom. Lundy*

_____

[5] This conclusion also dispenses with defendants' argument that "[o]nce these fifteen minutes [of waiting] are excluded, because plaintiff has not pled them to be compensable time under the FLSA, plaintiff's 'overtime' is reduced to zero."  *See* Defendants' Reply Brief at p. 2.

*v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013), unless all four of the following requirements are met: (1) attendance is outside of the employee's normal hours; (2) attendance is voluntary; (3) the training is not directly related to the employee's job; and (4) the employee does not perform any productive work during such attendance. *See* 29 C.F.R. § 785.27.

The plaintiff's allegations sufficiently plead that the first two of these requirements are not satisfied, and accordingly that the time spent in training may be compensable. According to the complaint, attendance was not voluntary because "Chime . . . would *have to* attend training seminars." SACAC ¶ 69 (emphasis added). Moreover the fact that $40 was withheld from his pay for time spent in the seminars raises the clear inference that attendance was not outside of Chime's normal working hours, and in the very least suffices to state a claim for unpaid wages under the NYLL. See *id.*[6]

### F.      Specificity of Plaintiff's Allegations

#### 1.      Introduction

The defendants make various arguments addressed to the sufficiency of the pleadings, only one of which merits discussion here. Several of the arguments are made for the first time in the defendants' reply papers. As courts should not, and do not, consider contentions raised for the first time in a reply brief, *see, e.g.*, *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) (citing cases); *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999), the arguments that are neither discussed nor referenced in defendants' initial brief are not addressed here. In addition, the defendants make arguments that seek to dismiss the collective and class actions on the grounds, respectively, that the plaintiff has not established that he is similarly situated

---

[6] The defendants' argument that the SACAC fails to specify compensable training courses attended by the security guards, who are purportedly required to attend (and therefore not entitled to compensation for) training seminars, asks too much. As noted, at the pleading stage, the plaintiff need only provide factual allegations that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's failure to specifically identify training seminars—those that he and others were not only required to attend, but for which pay was *deducted* from their wages—does not prove fatal to this claim.

to other employees, *see, e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010), and has not satisfied the requirements of Fed. R. Civ. P. 23.[7]  These arguments are essentially fact-based, and are more appropriately addressed on the plaintiff's motion for conditional and class certification addressed later in this opinion.

That said, the defendants properly raise the question of whether the SACAC makes allegations concerning unpaid hours of work with the requisite specificity to support an FLSA claim.  This specific issue has been addressed in a recent series of Second Circuit decisions.  Accordingly, these decisions are examined below to derive the applicable standard.

a.    *Lundy*

The plaintiffs in *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) alleged that they were deprived of overtime pay as a result of the defendants' deduction of time from paychecks for meals and other breaks, and because they were not paid for time spent working before and after scheduled shifts, as well as during training programs.  *Id.* at 110-11.  The *Lundy* court wrote that "to survive a motion to dismiss, Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours."  *Id.* at 114.  Noting "the degree of specificity needed to state an overtime claim under the FLSA" was a question of first impression, the court provided the following benchmark: "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *See id.* (citing 29 U.S.C. § 207(a)(1)).

_____

[7] By way of example, the defendants argue that the "episodic overtime claims" alleged here "do not affect all employees, and therefore do not lend themselves to a class action."  *See* Defendants' Reply Brief at p. 5.  They cite as support *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313 (E.D.N.Y. 2014), which considered motions for collective decertification and class certification, and discuss purported discrepancies within the plaintiff's and other employees' respective work experiences which would render this matter inappropriate for class treatment.  *See* Reply Brief at pp. 5-7.  On this motion *to dismiss*, the court need not—and will not—address these contentions.

Applying this standard to the facts before it, the *Lundy* court found no plausible FLSA claim, since the plaintiffs did not allege "a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *See id.* Although the plaintiff had alleged that she "occasionally" worked in excess of forty hours, "how occasionally or how long, she does not say; nor does she say that she was denied overtime pay in any such particular week." *See id.* at 114-15. Another plaintiff similarly failed to allege "that she was denied overtime pay in a week where she worked [ ] additional shifts." *Id.* at 115. The *Lundy* court therefore affirmed the dismissal of the plaintiffs' FLSA overtime claims. *Id.*

b.    *Nakahata*

The Circuit revisited this question in *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013). The *Nakahata* court reiterated the standard articulated in *Lundy*, and reached a similar conclusion, writing that

> Plaintiffs have merely alleged that they were not paid for overtime hours worked. These allegations—that Plaintiffs were not compensated for work performed during meal breaks, before and after shifts, or during required trainings—raise the possibility that Plaintiffs were undercompensated in violation of the FLSA and NYLL; however, absent any allegation that Plaintiffs were scheduled to work forty hours in a given week, these allegations do not state a plausible claim for such relief. To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.

*Id.* at 201. The *Nakahata* court therefore held that the "Plaintiffs failed to plead sufficient facts to make it plausible that they worked uncompensated hours in excess of 40 in a given week." Id.

c.    *Dejesus*

Shortly after *Nakahata*, the court once again considered this issue in *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 918, 187 L. Ed. 2d 781

(2014).  The plaintiff there had alleged that she worked in excess of forty hours per week during "some or all weeks" of her employment, and that she was not paid time-and-a-half for hours worked in excess of forty.  *See id.* at 86.  The Circuit in *Dejesus* expounded on its holdings in *Lundy* and *Nakahata*.  It wrote that the *Lundy* plaintiffs had failed to allege they worked uncompensated overtime, because the hours alleged by the plaintiffs fell short of adding up "to a claim that over forty hours had been worked in any particular week.  The allegations in *Lundy* thus failed because of arithmetic: tallying the plausible factual allegations, we could not get beyond forty hours in any given week, and therefore to a plausible claim for overtime."  *See id.* at 88-89.  As to *Nakahata*, the *Dejesus* court characterized the holding there as arising from the fact "that the allegations lacked the 'specificity' required"; although "they 'raise[d] the possibility' of an overtime claim, 'absent any allegation that Plaintiffs were scheduled to work forty hours in a given week,' they did not state a plausible claim for relief."  *See id.* at 89 (quoting *Nakahata*, 723 F.3d at 201).

The *Dejesus* court observed that its plaintiff provided even less specificity, since she "alleged only that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation."  *Id.* at 89.  It agreed with the court in *Pruell v. Caritas Christi*, 678 F.3d 10 (1st Cir. 2012), which considered a similar allegation to be "so threadbare or speculative that [it] fail[ed] to cross the line between the conclusory and the factual."  *Dejesus*, 726 F.3d at 89 (quoting *Pruell*, 678 F.3d at 13).  *Dejesus* therefore affirmed dismissal of the plaintiff's complaint.  *See id.* at 91.

The most salient corollary from the *Lundy-Nakahata-Dejesus* triumvirate is that an FLSA plaintiff must provide a certain degree of specificity as to uncompensated hours worked during *a particular week*.  This is reflected in the pivotal passages from each case.  *Lundy* wrote that "a plaintiff must sufficiently allege 40 hours of work *in a given workweek* as well as some uncompensated time in excess of the 40 hours," 711 F.3d at 114, and *Nakahata* provided that "absent any allegation that Plaintiffs were scheduled to work forty hours *in a given week*, these allegations do not state a plausible claim for such relief. . . . Plaintiffs must provide sufficient detail . . . to support a reasonable inference that they worked more than

14

forty hours *in a given week*." 723 F.3d at 201. *Dejesus* explained that the claims in *Lundy* failed "because of arithmetic: tallying the plausible factual allegations, we could not get beyond forty hours in any *given week*," 726 F.3d at 88-89, and the *Nakahata* complaint was deficient in that it lacked "any allegation that Plaintiffs were scheduled to work forty hours in *a given week*." *Id.* at 89 (quoting *Nakahata*, 723 F.3d at 201) (all emphases added). With this guidance, the court now turns to its analysis of the SACAC.

> 2.   Analysis

According to the SACAC, Chime's typical work schedule was five eight-hour shifts per week, and Peak Security Guards regularly worked forty hours per week. SACAC at ¶¶ 33-34. As noted, the SACAC alleges three basic scenarios that resulted in Chime (and, upon information and belief, Class and Collective Action members) working in excess of forty hours per week: (1) when he worked additional full shifts after being asked to cover other security guards' shifts; (2) when he began working before his shift was scheduled to start (pursuant to defendants' policy that security guards were to arrive at least fifteen minutes before their shift); and (3) when he continued to work beyond the end of his shift due to the relieving security guard not arriving in time. *See id.* at ¶¶ 36, 37, 40, 41, 43, 44.

Chime has plainly alleged with the requisite particularity that he worked overtime in connection with the first scenario—*i.e.* as covering other security guards' shifts. Paragraph 39 of the SACAC states that "[b]y way of example, Plaintiff Chime worked six (6) or more eight (8) hour shifts the weeks of January 24, 2010, July 25, 2010, August 2, 2010, August 9, 2010, December 9, 2010, and August 28, 2011." This allegation provides the precise specificity—*i.e.* work in excess of forty hours in a *given work week*—mandated by *Lundy* and its progeny.[8] It is telling—and not lost on the court—that the defendants' primary argument

---

[8] The court notes that these cases could plausibly be read as requiring plaintiffs to also allege specific weeks during which they did not receive overtime pay. However, a close reading betrays a concern for allegations of specific weeks during which excess hours were worked, not specific weeks during which employees were not paid. And to the extent that these cases are read in this alternative manner, the court may reasonably infer non-payment during the work weeks specifically pled, based on the general allegations that the defendants failed to pay overtime throughout the Class and Collective Action period. *See* SACAC at ¶¶ 54-56.

that the plaintiff failed to provide "examples of weeks in which those [overtime] hours were worked and not paid" relies on citations from seven paragraphs from the SACAC, none of which references the critical paragraph 39, which plainly provides the "examples of weeks" the defendants contend are lacking.[9]  In light of the above, the court finds that the plaintiff has met the specificity requirement established by Second Circuit jurisprudence.[10]

### G.   Supplemental Jurisdiction

As alleged in the SACAC, the basis for this court's jurisdiction over the plaintiff's state law claims is 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  Subsection 1367 also states, however, that a district court may decline supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction."  *See* 28 U.S.C. § 1367(c)(3).  To this end, the defendants argue that since the plaintiff's FLSA claims are time-barred and fail to state a claim, the court should decline to exercise supplemental jurisdiction over the state law claims.  Having found, however, that the plaintiff's FLSA claims survive dismissal, the

---

[9] In addition to citing *Lundy*, defendants seek support from several district court cases decided between 2007 and 2012.  *See* Motion to Dismiss at pp. 12-16.  Because these matters did not emanate from the Circuit, and were decided before *Lundy*, *Nakahata*, and *Dejesus*, they carry limited weight, particularly in light of *Lundy*'s observation that the Second Circuit "ha[d] not previously considered the degree of specificity needed to state an overtime claim under FLSA."  *See Lundy*, 711 F.3d at 114.

[10] The court notes that the plaintiff did not expressly plead specific weeks during which Chime was required to work overtime as a result of arriving fifteen minutes early to his assigned shifts, or because a relieving security guard arrived late to his post.  These deficiencies do not, however, prove fatal.  First, the Second Circuit authority cited above does not appear to mandate such an itemized level of particularity; so long as the court may surmise a given work week in which the plaintiff worked more than forty hours, and that the plaintiff was not paid for hours worked in excess of forty, his burden is satisfied.  And second, because the overtime hours in the second and third scenarios described above were worked pursuant to the defendants' policies, *see* SACAC at ¶¶ 40, 43, the court may reasonably infer that such practices occurred as a matter of course throughout the relevant period.

court should not decline to exercise supplemental jurisdiction over the plaintiff's state law claims.[11]

## III.   PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

### A.   Legal Standard

Under section 216 of the FLSA, "one or more employees" may bring an action under the FLSA "for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b); *see, e.g. Gortat v. Capala Bros.*, No. 07 Civ. 3629, 2009 WL 3347091, at *8 (E.D.N.Y. Oct. 16, 2009) (citing *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103 (S.D.N.Y. 003)), *report and recommendation adopted*, No. 07 Civ. 3629, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010), *aff'd*, 568 F. App'x 78 (2d Cir. 2014).  Because section 216 carries the further requirement that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing," actions brought on behalf of other employees are not considered class actions, but collective actions.  *See, e.g.*, *Gjurovich*, 282 F. Supp. 2d at 103-04; *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006) ("In a collective action under FLSA—unlike in a class action under Federal Rule of Civil Procedure 23—only plaintiffs who affirmatively opt in can benefit from the judgment or be bound by it.") (citing *Gjurovich*).  Nevertheless, as with class actions, courts have established a certification process for determining whether a case may proceed as a collective action.  *See, e.g.*, *Gjurovich*, 282 F. Supp. 2d at 103-04.

In *Myers v. Hertz Corp.*, the Second Circuit explained the two-step process for determining whether to certify collective actions under the FLSA.  624 F.3d 537, 554–55 (2d Cir. 2010).  The instant motion concerns only the first step of the process, called conditional certification.  Here, the court addresses whether notice is to be sent to "similarly situated" employees to provide them the opportunity to join, or "opt in" to, the action.  *Id.* at 554 (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).  Once additional plaintiffs

---

[11] Because the NYLL claims arise from the same common nucleus of operative fact as the FLSA claims, the defendants do not, and cannot, argue that they are not sufficiently related so as to form part of the same case or controversy.  *See, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011).

have opted in and a fuller record has been developed, the court may proceed to the second step to determine whether the action should be decertified if the record discloses that the opt-in plaintiffs are not, in fact, similarly situated. *Id.* at 555.

Conditional certification presents plaintiffs with a "minimal burden." *Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367-68 (S.D.N.Y. 2007). Certification is appropriate upon a modest factual showing that the plaintiffs and others are "similarly situated" because they "together were victims of a common policy or plan that violated the law." *Id.* (quoting *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) and citing *Krueger v. New York Telephone Co.*, No. 93 Civ. 0178, 1993 WL 276058 (S.D.N.Y. July 21, 1993)); *see also Myers*, 624 F.3d at 555 (same) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y. 1997)). At this stage the plaintiffs need demonstrate that they are similarly situated to the defendants' other employees only with respect to the FLSA violations they allege—not other factors. *Damassia*, 2006 WL 2853971, at *6 (law looks to whether the plaintiffs "are similarly situated 'with respect to their allegations that the law has been violated.'") (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (emphasis omitted). The standard of proof at this stage is low; the court's task is "only to conclude whether there *may be* other similarly situated workers," *Shi Yong Li v. 6688 Corp.*, No. 12 Civ. 6401, 2013 WL 5420319, at *2 (S.D.N.Y. Sept. 27, 2013) (emphasis in original), and "need not evaluate the underlying merits of a plaintiff's claims." *Mendoza v. Ashiya Suhi 5, Inc.*, No. 12 Civ. 8629, 2013 WL 5211839, at *3 (S.D.N.Y. Sept.16, 2013) (quoting *Damassia*, 2006 WL 2853971, at *6 and citing *Hoffmann v. Sbarro*, 982 F. Supp. at 262). Although this modest factual showing cannot rest on unsupported assertions, a plaintiff can meet this burden by "rely[ing] on the pleadings, but only as supplemented by other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members." *Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010) (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007); *Prizmic v. Armour, Inc.*, No. 05 Civ. 2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006)).

**B.    The Parties' Arguments and the Evidence Before the Court**

In support of his motion, the plaintiff provides his own declaration ("Chime Decl.") as well as one submitted by fellow Peak Security guard Paul Kyree ("Kyree Decl."). Chime and Kyree were both tasked with the same responsibilities as security guards, and list by name approximately fifteen other individuals who had similar duties as them. *See* Chime Decl. at ¶¶ 3, 5; Kyree Decl. at ¶¶ 3, 6. Chime's declaration describes his regular forty-hour work schedule, as well as the three conditions discussed above that resulted in him working beyond forty hours per week. *See* Chime Decl. at ¶¶ 6-8. Notably, two of these conditions—working additional hours due to arriving early to a shift and staying beyond the scheduled end of a shift when the relieving guard has not arrived—are expressly connected to Peak Security policies. *See id.* at ¶¶ 9-10; *see also* Kyree Decl. at ¶ 15.

As noted, Chime's contentions regarding his payment for hours worked above forty present in various forms: he states that he was not paid for the pre-and post-shift hours, that he was not paid overtime premiums, and that he was paid $9.00 per hour for his overtime work. *See* Chime Decl. at ¶¶ 12-13; 21-23. He adds that he learned from personal conversations that other security guards (eleven of whom he lists by name) likewise "worked more than 40 hours in a week, were not paid weekly, were not paid for all of the hours they worked (including work before and after their shifts), and were paid $9.00 in cash for every overtime hour."[12] *See id.* at ¶ 19.

Chime's express references to overtime premium pay are similarly inexact. He writes that

> Peak Security's payroll policy injured me and the other security guards in the same way: we were not paid overtime premium pay. We are all victims of this policy. [ ] Other security guards, like me, were not paid overtime premium pay for each hour we worked over 40 in a week. [ ] Peak Security did not pay me and, upon information and belief, other security guards time and one half (1 ½) our regular rate for every hour that we worked in excess of

---

[12] Chime also alleges that he was not paid on time, that he was paid in cash, and that he was not given a proper wage statement, and references two guards who likewise were not given a wage statement and were paid in cash for overtime hours. *See* Chime Decl. at ¶¶ 17, 20.

forty (40) hours per workweek and for every hour that we worked.

*See id.* at ¶¶ 21-23.  Finally, Chime states that he and other Peak Security guards "all have the same thing in common: Peak Security did not pay us overtime for any hour we worked above 40 in a week," and that based on Peak Security's high turnover rate and Chime's conversations with a dispatcher, he is aware of at least fifty people who performed the same duties and worked the same hours as he did and who were likewise not paid overtime premiums.  *See id.* at ¶¶ 25, 28.

Kyree's declaration echoes some, but not all, of the allegations asserted by Chime. Like Chime, Kyree states that conversations with other guards revealed that Peak Security paid $9.00 per hour for hours worked over forty, and/or failed to pay overtime for such hours.  *See* Kyree Decl. at ¶¶ 7-9, 19.[13]  Notably, although Kyree, like Chime, references hours worked pursuant to Peak Security's policy that guards are not to leave their posts until relieved, *see id.* at ¶¶ 15-16, he says nothing about being required to arrive fifteen minutes before his shift, or working additional shifts for which he was not paid overtime.  Finally, while both Chime and Kyree reference training seminars, *see id.* at ¶ 19; Chime Decl. at ¶ 27, only Kyree states that these occurred outside his normal work schedule and that he did not get paid for the hours spent at the training.  *See* Kyree Decl. at ¶ 19.

Chime contends that these declarations suffice to establish the "similarly situated" requirement for conditional collective certification, since the putative collective members performed the same job duties as Chime, and, like Chime, were victim to two separate but related company-wide practices: that Peak Security failed to pay its workers for all hours worked over forty, and that when it did pay for these hours, it did not provide overtime premiums.  The defendants oppose this position primarily[14] on the ground that the "similarly situated" requirement has not been met, arguing that the plaintiff has failed to offer sufficient

_____

[13] Kyree does not state, however, that Peak Security failed altogether to pay its guards for hours worked over forty.

[14] Defendants' argument that the court should not render a decision on collective certification while the motion to dismiss is pending is rendered moot by the discussion above.

factual support that the putative plaintiffs may be categorized alongside Chime as victims of a policy that violated the law.  They support this position with declarations from (1) Peak Security supervisors which state that the allegations contained in the plaintiff's declarations are false and that Peak Security pays its employees for all hours worked, including overtime; and (2) a number of Peak Security guards—among them several of the individuals referenced in the plaintiff's declarations—who also deny the allegations central to this action and state that they were paid time-and-a-half for all overtime hours worked.

    **C.**    **Analysis**

        1.    <u>Common Policy or Plan Requirement</u>

As stated above, in order to obtain conditional collective certification, the plaintiff must make a "modest factual showing" of an unlawful policy or plan.  *See, e.g.*, *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 564 (S.D.N.Y. 2012).  Although Chime's and Kyree's declarations[15] are models for neither consistency nor clarity, they do sufficiently establish a common policy or plan in connection with Peak Security's alleged nonpayment of overtime.  While the plaintiff's only explicit references to an unlawful nonpayment policy strike the court as conclusory, *see* SACAC at ¶ 84 ("Defendants had a policy and practice of refusing to pay overtime compensation to its employees for their hours worked in excess of forty (40) hours per workweek."); Chime Decl. at ¶ 21 ("Peak Security's payroll policy injured me and the other security guards in the same way: we were not paid overtime premium pay. We are all victims of this policy."), the plaintiff's declarations discuss two Peak Security policies which resulted in FLSA violations: that guards were required to arrive fifteen minutes early to each shift, and were not allowed to leave their posts until relieved.  *See* Chime Decl. at ¶¶ 9-10; Kyree Decl. at ¶ 15.

---

[15] The fact that the plaintiff provides only two declarations is not fatal to his motion.  *See, e.g.*, *Hernandez v. Bare Burger Dio Inc.*, No. 12 Civ. 7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases in which "courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit" and doing the same).

While such practices may not be illegal (and to be sure, the plaintiff does not claim that they are), for conditional certification purposes "it is sufficient to show that a facially lawful policy was implemented in an unlawful manner, resulting in a pattern or practice of FLSA violations." *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 405 (S.D.N.Y. 2012). In *Amador v. Morgan Stanley & Co. LLC*, No. 11 Civ. 4326, 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013), for example, the court granted conditional certification based on evidence of "a *de facto* policy . . . of requiring overtime work without attendant compensation." *Id.* at *6. Here, too, although the plaintiff has not alleged a formal policy in violation of the FLSA, he has shown that Peak Security policies necessarily required security guards to work beyond their scheduled shifts, and that they were not compensated for this time. "Such allegations are sufficient at the conditional certification stage . . . ." *See id.* (citing *Winfield*, 843 F. Supp. 2d at 408-09).

As noted, the defendants counter with a series of declarations which refute the contentions made by Chime and Kyree. However, declarations submitted in opposition to a motion for conditional certification carry limited weight, since "[t]he focus of the court's inquiry is not on the defendants' evidence, but on whether the plaintiffs have made their requisite showing." *Stevens v. HMSHost Corp.*, No. 10 Civ. 3571 (E.D.N.Y. June 15, 2012) (order granting conditional certification) at p. 14 (citing *Lujan v. Cabana Mgmt., Inc.*, No. 10 Civ. 755, 2011 WL 317984, at *6-7 (E.D.N.Y. Feb. 1, 2011); *Damassia*, 2006 WL 2853971, at *7). As stated in *Damassia*:

> [Defendant's] challenges to plaintiffs' factual showing are both inadequate and premature. . . . [T]he question at this early stage is only whether, applying a "lenient" standard, the court is satisfied that plaintiffs, through their allegations, affidavits and other evidence, have met their "minimal" burden of demonstrating entitlement to a "preliminary" determination that they are similarly, even if not identically, situated with respect to their FLSA claims. At most, defendant's attacks on plaintiffs' affidavits and other evidence raise questions as to whether plaintiffs could prevail under a more stringent standard and whether the opt-in plaintiffs will survive a decertification motion at the close of discovery; defendant's arguments and evidence do not, however, undermine

> plaintiffs' "modest factual showing" to such an extent that a
> preliminary determination in favor of plaintiffs is unwarranted at
> this stage.

2006 WL 2853971, at *5; *see also Colon v. Major Perry Street Corp.*, No. 12 Civ. 3788, 2013 WL

3328223, at *5 (S.D.N.Y. July 2, 2013) ("Defendants . . . may not defeat a court's

determination that [p]laintiffs are similarly situated by submitting their own affidavits.")

(citing *Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638, 2008 WL 4619858, at *3 (S.D.N.Y.

Oct. 16, 2008)); *Ravenell v. Avis Budget Car Rental, LLC*, No. 08 Civ. 2113, 2010 WL 2921508,

at *5 (E.D.N.Y. July 19, 2010) ("[T]he employee declarations submitted by [defendant]

'should be discounted at this stage' because Plaintiffs have not yet been able to depose the

employees who signed them. . . . It would be inappropriate for the Court to credit those

declarations and render a final determination based on them at this juncture in the case.")

(quoting *Francis*, 2008 WL 4619858, at *3). Moreover, on the present motion, "[t]he court is

not to 'resolve factual disputes, decide substantive issues going to the merits, or make

credibility determinations.'" *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y.

2013) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).

Weighing the defendants' declarations against the plaintiff's would require the court to do

just that, an exercise I decline to undertake.

　　The defendants cite a number of cases which they argue mirror the case *sub judice* in

that they involved "a total dearth of factual support for a plaintiff's allegations of widespread

wrongdoing." *See* Memo in Opposition at p. 8. In addition to the majority of the cited

authority emanating from outside the Second Circuit, these cases are also facially

distinguishable for the broad reason that they involved weaker allegations in support of

certification than those presented here. *See Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir.

1983) (upholding decision to deny motion where lower court was presented only with

plaintiff counsel's unsupported assertions of widespread FLSA violations and of purported

additional plaintiffs); *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264 (D. Minn. 1991) (no

reference to declarations submitted in support of motion); *Klegerman v. F.G. Apparel, Inc.*, No.

85 Civ. 7887, 1986 WL 2531, at *6 (N.D. Ill. Feb. 11, 1986) (plaintiff failed to specifically name any other employee alleged to be similarly situated).[16]  That the defendants' argument on this point rests upon a collection of readily distinguishable, decades-old, out-of-circuit matters, solidifies the court's view that the plaintiff has sufficiently shown the existence of a common policy or plan that violated the FLSA.

    2. <u>Similarly Situated Requirement</u>

   Regarding the similarly situated requirement, at this stage, "the focus of the inquiry is . . . whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated."  *Levy v. Verizon Info. Servs. Inc.*, No. 06 Civ. 1583, 2007 WL 1747104, at *3 (E.D.N.Y. June 11, 2007) (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (internal quotation marks omitted); *see also Cano v. Four M Food Corp.*, No. 08 Civ. 3005, 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009) ("As long as [plaintiffs] were all similarly situated with respect to being subject to the same policy of being denied overtime compensation, and there exists a factual nexus among the plaintiffs, conditional certification of the collective action is appropriate.") (citing cases) (emphasis omitted).  Here, both Chime and Kyree provide—based on first-hand conversations and observations—that a number of Peak Security guards (who are listed by name) did not receive overtime premiums (and in fact were paid less for their overtime hours), and Chime makes similar allegations regarding Peak Security's failure to pay its guards *at all* for overtime hours.  Although the specifics of Peak Security's alleged malfeasance are at this point less than crystal clear, these statements demonstrate, at bottom, that the proposed plaintiffs are similarly situated with regard to the allegations that Peak Security violated the FLSA by not sufficiently compensating its security guards for hours worked over forty per week.  *See, e.g.*, *Amador*, 2013 WL 494020, at *5, 9 (similarly situated requirement satisfied where declarants alleged they were not always compensated for time worked over forty hours per week); *Winfield*, 843 F. Supp. 2d at 405 ([T]he plaintiffs' and declarants' common allegations that

---

   [16] *Vreeland v. Ethan Allen, Inc.*, 828 F. Supp. 14 (S.D.N.Y. 1993) did not involve a certification motion and accordingly is of no relevance.

they were effectively required to work more than forty hours per week but were not compensated for all overtime hours worked suffice to meet their minimal burden of showing that they are similarly situated to one another and to potential opt-in plaintiffs.")

The facts presently before the court mirror those in *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54 (E.D.N.Y. 2011), where both of the two named plaintiffs

> submitted an affidavit stating that other employees employed by Defendants worked in excess of 40 hour weeks, without being provided proper payment for overtime. Further, the affidavits submitted specifically name additional co-workers employed as sanitation workers who drove, picked up, hauled and dumped private garbage containers, and who also were allegedly not properly compensated for their overtime by Defendants. Each Plaintiff states that his knowledge of the other laborers working in excess of 40 hours per week without being compensated for overtime hours is based upon the fact that they specifically discussed the matter among themselves.

*Id.* at 58 (internal citations omitted). As did the court in *Moore*, I find that "the [p]laintiff['s] affidavits provide specific allegations that other employees who performed the same or similar work were not paid appropriate overtime compensation," and therefore, that Chime has "met the lenient evidentiary standard necessary to warrant the determination, at this stage, that the proposed opt-in plaintiffs are 'similarly situated'" by demonstrating "a sufficient 'factual nexus between [his] situation and the situation of other current and former' employees, who were potentially denied . . . overtime wages." *See id.* at 59 (quoting *Sexton v. Franklin First Fin., Ltd.*, No. 08 Civ. 4950, 2009 WL 1706535, at *9 (E.D.N.Y. June 16, 2009) and citing *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 215 (E.D.N.Y. 2009)).

Defendant's argument in opposition—which, notably, makes *no* reference to Chime's and Kyree's declarations—does not mandate a different result. Its principal source of support, *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797 (S.D.N.Y. 2012), *adopted*, No. 09 Civ. 9575, 2012 WL 2588771 (S.D.N.Y. July 2, 2012), is distinguishable on numerous grounds. Chief among them is that the "main contention" around which *Guillen*'s "similarly situated" inquiry centered was whether the named plaintiff performed tasks that rendered

him "non-exempt" for FLSA overtime purposes, a question the court ultimately answered in the negative because the plaintiff offered "virtually no evidence" to suggest that individuals with his job description were performing non-exempt tasks.  *See id.* at 800.  Here, by contrast, the plaintiff has offered two declarations which demonstrate that Chime and the putative plaintiffs are similarly situated with regard to the primary "similarly situated" question before the court—Peak Security's alleged nonpayment of overtime.

In light of the above, the court finds that the requirements for conditional collective certification have been satisfied.  The plaintiff's motion should therefore be granted insofar as it seeks conditional certification and authorization to send notice to potential opt-in plaintiffs.

## D.  Equitable Tolling[17]

A substantial question remains, however, in defining the group of potential opt-in plaintiffs to whom notice should be sent.  In an FLSA collective action, the statute of limitation runs for each plaintiff until he or she affirmatively opts in to the lawsuit.  *See, e.g.*, *Yahraes v. Rest. Associates Events Corp.*, No. 10 Civ. 935, 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011).  Recognizing that some claims by potential opt-in plaintiffs may become time-barred while the certification motion is under consideration, the plaintiff has asked the court to toll the statute of limitations between September 9, 2013 (the date the certification motion was fully briefed) and the date the court enters its order on the motion.  Courts have tolled the statutory period in order to avoid the "inequitable circumstances" that may result from the delay in deciding a certification motion.  *See, e.g.*, *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014).  In making an equitable tolling determination, courts consider whether the party seeking to toll the statute "(1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  *Zerilli-Edelglass v. New York City Transit Auth.*,

---

[17] On July 17, 2015, the court granted the plaintiff leave to submit supplemental briefing regarding tolling the statute of limitations, which the plaintiff did on July 23, 2015.  *See* Dkt Nos. 81, 82.

333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)).  The defendants' objection to the plaintiff's tolling request centers on the first prong—they argue that, by not seeking equitable tolling until nearly two years after the certification motion was filed, the plaintiff has failed to act with the reasonable diligence required to warrant the "rare and exceptional" application of the equitable tolling doctrine.  *See id.* at 80 (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

Although the court recognizes (and wishes to avoid) the possible inequity resulting from a delay in deciding the certification motion, it must give credit to the defendants' argument.  Indeed, the court sees no reason for the plaintiff to have delayed as long as he did—more than twenty-two months after the motion was filed—to seek this relief.  None of the cases cited by the plaintiff supports a finding of reasonable diligence in these circumstances.  *See Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014), Dkt. No. 28 (delay of approximately seven months between certification motion and request for equitable tolling); *Robles v. Liberty Rest. Supply, Corp.*, No. 12 Civ. 5021, 2013 WL 6684954 (E.D.N.Y. Dec. 18, 2013), Dkt. No. 34 (plaintiff sought equitable tolling in original certification motion); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438 (S.D.N.Y. 2012), Dkt. No. 16 (same); *Yahraes v. Rest. Associates Events Corp.*, No. 10 Civ. 935, 2011 WL 844963 (E.D.N.Y. Mar. 8, 2011), at *3 (relief granted where as a result of stay, plaintiffs, "through no fault of their own, have been delayed in prosecuting their action and distributing 216(b) notice to potential opt-in plaintiffs").

The *McGlone* court wrote that "[w]hile plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings."  867 F. Supp. 2d at 445.  The plaintiff's delay in seeking this relief places him, in this instance, in the camp of those indefinitely sitting on their rights, rather than those diligently and timely pursuing their claims.  With that said, the plaintiff has otherwise diligently litigated this matter, and while he bears responsibility for

this delay, he should not be penalized more than necessary by any delay in the decision on the certification motion. Accordingly, the court recommends that the statute of limitations be tolled as of the date equitable tolling was first sought, July 23, 2015. *Cf. Robles*, *McGlone*, *supra*.

## IV.  PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### A.  Introduction

The plaintiff has also moved for class certification of his three NYLL claims.[18]  His motion seeks to define a class of "[a]ll individuals who Defendant Peak Security Plus Inc. has employed or is employing as a security guard at any time since January 28, 2007 through the entry of judgment."  *See* Memo in Support at p. 16.  He also seeks for his present counsel to be appointed class counsel.  The defendant has opposed the motion on the grounds that the requirements of Fed. R. Civ. P. 23(a) have not been satisfied.  For the reasons set forth below, the court recommends that the motion be granted.

### B.  Legal Standard

The Supreme Court has emphasized that the class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979); *see also Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013); *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550, 180 L. Ed. 2d 374 (2011).  Rule 23 thus establishes two sets of prerequisites that must be met before an action may proceed on behalf of a class.

First, under Rule 23(a), the plaintiff must establish each of four requirements, often referred to as the criteria of numerosity, commonality, typicality, and adequacy.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997); Fed. R. Civ. P. 23(a).  In *Amchem*, the Supreme Court set forth concisely the parameters of the Rule 23(a)[19] inquiry:

---

[18] Although the plaintiff's motion for certification preceded the filing of the SACAC, because the membership of the class proposed in the SACAC does not substantively differ from that in the prior complaint, this has no bearing on the resolution of the certification motion.

[19] The Rule provides that

[o]ne or more members of a class may sue or be sued as representative

> Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

521 U.S. at 613. As the Supreme Court has recently emphasized, the question of certification will frequently overlap with the merits of the plaintiff's claims because class determination considerations are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Behrend*, 133 S. Ct. at 1432 (quoting *Dukes*, 131 S. Ct. at 2551); *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006) ("[C]areful examination of *Eisen* reveals that there is no basis for thinking that a specific Rule 23 requirement need not be fully established just because it concerns, or even overlaps with, an aspect of the merits."), *decision clarified on denial of reh'g*, 483 F.3d 70 (2d Cir. 2007). Thus, the Supreme Court reiterated that Rule 23(a) "does not set forth a mere pleading standard," but rather the party seeking class certification bears the burden of establishing the existence of all four Rule 23(a) requirements "*in fact*." *Behrend*, 133 S. Ct. at 1432 (quoting *Dukes,* 131 S. Ct. at 2551-52) (emphasis in original). The class certification question thus requires the court to "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial Pub. Offerings*, 471 F.3d at 41.

Separately, class action plaintiffs must establish one of three additional requirements set forth by Rule 23(b). *See* Fed. R. Civ. P. 23(b). In this case, the plaintiff seeks certification under Rule 23(b)(3), which is satisfied if the court finds that "the questions of law or fact

---

> parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Not only must plaintiffs satisfy these prerequisites, they face a significantly higher evidentiary burden in doing so than the "minimal burden" posed by conditional certification under the FLSA.  "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers,* 624 F.3d at 547; *see also Dukes,* 131 S.Ct. at 2551 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule."); *In re Initial Pub. Offerings*, 471 F.3d at 41 (district court must "resolve[ ] factual disputes relevant to each Rule 23 requirement").  Courts, in turn, must conduct a "rigorous analysis" to ensure that a party seeking class certification has met this burden with respect to each requirement.  *Dukes,* 131 S.Ct. at 2551.  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."  *Id.*; *see also Behrend*, 133 S. Ct. at 1432 (2013); *In re Initial Pub. Offerings,* 471 F.3d at 41.  That said, "[c]ourts in this Circuit have displayed 'a preference for granting rather than denying class certification.'"  *Morris v. Alle Processing Corp.*, No. 08 Civ. 4874, 2013 WL 1880919, at *5 (E.D.N.Y. May 6, 2013) (quoting *Gortat v. Capala Bros.*, 257 F.R.D. at 361 and citing *Marisol A. v. Giuliani*, 126 F.3d 372, 277 (2d Cir. 1997)).

### C.   Analysis

#### 1.   Rule 23(a)

##### a.   *Numerosity*

Rule 23(a)'s numerosity prong – which permits class certification only if the class "is so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1) – is presumed to be satisfied where a proposed class contains more than forty members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 Newberg On Class Actions 2d § 3.05 (1985 Ed.)); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (same).  Chime's declaration provides that he is aware of at least fifty

other class-eligible individuals, a figure he based upon Peak Security's high turnover rate and on conversations with a dispatcher. *See* Chime Decl. ¶ 28. Similarly, Kyree references a conversation with a superior which revealed that Peak Security employs nearly sixty guards at any given time. *See* Kyree Decl. ¶ 20.

The defendants counter that the plaintiff's statements are "pure speculation without any factual support," *see* Memo in Opposition at p. 11, but does not cite any authority demonstrating that the statements regarding numerosity are so speculative so as to merit being stripped of their evidentiary value; in fact, the one case cited by the defendants found the numerosity requirement to be satisfied. *See Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 183 (S.D.N.Y. 2007). Although the credibility of Chime and Kyree's declarations (particularly as regards the numerosity element) is called somewhat into question by the fact that several of the guards named therein submitted declarations denying the allegations of nonpayment of overtime, "in assessing numerosity a court may make 'common sense assumptions' without the need for 'precise quantification of the class.'" *Russo v. CVS Pharmacy, Inc.*, 201 F.R.D. 291, 295 (D. Conn. 2001) (quoting *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. 2000)). Kyree's mention of sixty guards working *at any given time*, coupled with Chime's reference to Peak Security's "high turnover rate" give rise to the "common sense assumption" that more than forty guards worked for the defendants over the course of six years. Moreover, it is telling that the defendants, despite challenging the numerosity element, have not submitted an affidavit or any other evidence to suggest that fewer than forty security guards worked for Peak Security during the class period. In light of the above, the court finds Rule 23(a)'s numerosity requirement to be satisfied.

b.   <u>*Commonality / Typicality*</u>

Rule 23(a)(2) and 23(a)(3) require, respectively, that there be questions of law or fact common to the class, and that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a). These elements "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A. v. Giuliani*, 126 F.3d at 376. Both requirements "serve as guideposts for

determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S. Ct. at 2551 n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58 n.13 (1987)).  The court finds both of these elements to be satisfied here.

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. 147, 157) (internal quotation marks omitted).  This does not merely mean, however, that the plaintiffs "have all suffered a violation of the same provision of law." *Id.*  Rather, "[t]heir claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *see also Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (discussing *Dukes*).  Commonality is usually satisfied in wage cases "where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Lewis v. Alert Ambulette Serv. Corp.*, No. 11 Civ. 442, 2012 WL 170049, at *10 (E.D.N.Y. Jan. 19, 2012) (citing *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y. 2004)) (commonality requirement satisfied where all potential class members were alleged to have been harmed by common practice of defendants' failure to adequately pay for overtime hours; legal theory set forth in complaint was common to all class members).

This is precisely the case here, where the plaintiff has alleged that he and the proposed class members were "subject to the same allegedly discriminatory practice of underpayment, raising common questions of law and fact sufficient to warrant class certification." *See Rosario v. Valentine Ave. Disc. Store, Co.*, No. 10 Civ. 5255, 2013 WL 2395288, at *5 (E.D.N.Y. May 31, 2013), *report and recommendation adopted*, No. 10 Civ. 5255, 2013 WL 4647494 (E.D.N.Y. Aug. 29, 2013).  These questions include whether the defendants violated the NYLL by failing to (1) pay overtime premiums, (2) pay for all overtime hours worked, or (3) furnish wage statements, and they provide a framework that suffices to satisfy the

commonality requirement.  *See, e.g.*, *Morris v. Alle Processing Corp.*, No. 08 Civ. 4874, 2013 WL 1880919, at *9 (E.D.N.Y. May 6, 2013) (commonality and typicality satisfied where "[t]he named plaintiffs' claims and the proposed class members' claims arise from the same course of conduct (defendants' practice and policy of failing to pay wages and overtime), raise common issues of law and fact (*inter alia*, whether defendants[ ] . . . failed to pay time and half for all hours worked over forty . . . ), and are based on the same legal theories (violations of NYLL)"); *Guan Ming Lin v. Benihana New York Corp.*, No. 10 Civ. 1335, 2012 WL 7620734, at *7 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted*, No. 10 Civ. 1335, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013) ("The plaintiffs have also demonstrated commonality and typicality of the proposed class with regard to their wage statement claim. . . . Resolution of the sufficiency of the common form of the defendants' wage statement is thus likely to produce common answers for the proposed class as a whole."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615 (S.D.N.Y. 2012) (commonality satisfied where "[a]ll Class Members raise common issues: (1) whether Defendant had a policy of not paying Marketing Representatives and Specialists overtime premium pay for hours worked over 40 in a workweek; (2) whether Defendant failed to pay Class Members premium overtime wages; and (3) whether Defendant knew or should have known that Class Members were working 'off-the-clock'") (citing cases).

Along similar lines, typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (quoting *Marisol A.*, 126 F.3d at 376); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (same).  This requirement is satisfied here, where the same course of events and legal arguments underlie each putative class member's claims. *See, e.g.*, *Morris v. Affinity*, 859 F. Supp. 2d at 616 (typicality met where "[p]laintiff's claims arose from the same factual and legal circumstances that form the bases of the [c]lass [m]embers' claims") (citing *Willix v. Healthfirst*, No. 07 Civ. 1143, 2009 WL 6490087, at *2-3 (E.D.N.Y. Dec. 3, 2009) (typicality satisfied where proposed class members suffered same

injury as a result of defendant's overtime compensation policies); *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (typicality satisfied where plaintiffs and class members had same unpaid overtime claims)); *Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 127-28 (S.D.N.Y. 2011) (typicality satisfied where "the minimum wage and overtime claims alleged by Plaintiffs are similar to those of the class members and arise from the same allegedly unlawful practices and policies").

 The defendants point to no variance in either the course of events underlying the proposed class members' claims or in their legal arguments that would undermine a finding of commonality or typicality.  Instead, their opposition consists of an attack on the sufficiency of the plaintiff's evidence, arguing that does not constitute "sufficient proof" as required under *Dukes.  See* 131 S.Ct. 2554.  However, proof consisting of employees' declarations is regularly held sufficient to establish commonality and typicality.  In *Poplawski v. Metroplex on the Atl., LLC*, No. 11 Civ. 3765, 2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012), for example, commonality was found based on the declarations submitted by three named plaintiffs which alleged that "the defendant engaged in the same allegedly illegal wage practices," that the plaintiffs "witnessed their co-workers working overtime, and that they believe that none were paid overtime premiums."  *Id.* at *7.  The court's finding of typicality was similarly based on the declarants' statements that the proposed class members "all worked overtime without premium or spread of hours pay" and were "refused pay for their last months of work."  *See id.* at *8; *see also Rosario v. Valentine Ave. Disc. Store, Co.*, 2013 WL 2395288, at *6 (finding commonality based on employee declarations).  Conversely, *Falcon*, the defendant's primary source of support, involved a complaint that "provided an insufficient basis for concluding that the adjudication of [plaintiff's] claim of discrimination in promotion would require the decision of any common question" and whose plaintiff lacked "any specific presentation identifying the questions of law or fact that were common to the claims of [plaintiff] and of the members of the class he sought to represent."  457 U.S.

at 158.[20]  In sum, the court concludes that the commonality and typicality requirements of Rule 23(a) have been satisfied.

c.   <em><u>Adequacy</u></em>

Rule 23(a)'s adequacy requirement asks whether: (1) the plaintiff's interests are antagonistic to those of other class members; and (2) plaintiff's attorneys are qualified, experienced and capable of conducting the litigation.  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).  The inquiry focuses on "uncovering 'conflicts of interest between named parties and the class they seek to represent,'" *id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)), and a conflict sufficient to defeat a motion for certification "must be fundamental."  *Id.* (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001), *abrogated in part by In re Initial Pub. Offerings*, 471 F.3d 24.  Courts may also consider, *inter alia*, whether the putative representative "is of sufficient moral character to represent a class."  *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (citing *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)).

The final consideration—the sufficiency of Chime's character—serves as the sole basis for the defendants' opposition.  They provide a declaration from a Peak Security supervisor stating that Chime was fired from Peak Security for fraudulently using Peak Security's name in applying for a security guard license, squatting without permission in Mr. Osula's apartment without consent, and for other performance-related issues.[21]  They also

---

[20] Similarly, *Attenborough v. Const. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82 (S.D.N.Y. 2006), also cited in opposition, does not stand for the suggested proposition that a class action plaintiff must provide statistical evidence to establish commonality and typicality.  Rather, *Attenborough* simply noted the requirement "that plaintiffs produce some quantum of evidence to satisfy the commonality and typicality requirements," which could be accomplished by providing "affidavits, statistical evidence, or both."  *See id.* at 95.  In other words, affidavits may alone suffice.  Additionally, it should be noted that *Attenborough*—and each of the cases it cites on this issue—is an employment discrimination case. *See id.* at 97-98.  The other case cited by the defendants, *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178 (S.D.N.Y. 2007), also recognized that commonality and typicality may be established by either statistical or anecdotal evidence.  *See id.* at 183.
[21] Chime has provided a declaration denying the allegations of fraud and stating that he had a reasonable belief that he was permitted to stay in Mr. Osula's apartment.

attack Chime's credibility in light of the declarations offered in support of their opposition, which refute the allegations contained in Chime's motion and declaration. The defendants thus argue that Chime is "hardly qualified to act as class representative in the proposed class action."

Although, as noted, a class representative's character deficiencies may serve as a viable challenge to a finding of adequacy, "courts look to personal characteristics only insofar as they touch upon the lawsuit." *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *15 (S.D.N.Y. Sept. 29, 2006) (quoting *Jane B. by Martin v. New York City Dep't of Soc. Servs.*, 117 F.R.D. 64, 71 (S.D.N.Y. 1987)). Accordingly, any inquiry "into the representatives' personal qualities is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit." *Martin*, 117 F.R.D. at 71 (collecting cases); *see Gortat v. Capala Bros.*, 257 F.R.D. at 364 (class representative need not be morally upstanding; rather, "he or she must not have damaged his or her credibility regarding those issues that are central to the action").

The claims of Chime's purported fraud, squatting, and performance issues—even if believed in light of Chime's responsive declaration—do not touch upon the prosecution of this lawsuit, nor do the defendants even attempt to argue that they do. The only matter that the defendants claim "go to the heart of this case and are not merely collateral to this action," *see* Memo in Opposition at pp. 14-15, are the inconsistencies between Chime's contentions and the declarations submitted in opposition to his motion. However, while these declarations may call Chime's overall credibility into question, they do not case a shadow of doubt so severe so as to disqualify him from serving as a class representative. Particularly in light of "the Second Circuit's general preference [ ] for granting rather than denying class certification," *Cortigiano v. Oceanview Manor Home For Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005) (quoting *Leider v. Ralfe*, 2003 WL 22339305, at *11 (S.D.N.Y. Oct. 10, 2003)), and the fact that "the cookie-cutter nature of the [defendants'] affidavits is suspicious," *see Flores v.*

36

*Anjost Corp.*, 284 F.R.D. 112, 117 (S.D.N.Y. 2012), the defendants' declarations do not warrant a finding that Chime is inadequate to serve as the class representative.

        2.    <u>Rule 23(b)</u>

      The plaintiff has argued for satisfaction of Rule 23(b) by way of subsection (3), which provides that class certification is appropriate if "questions of law or fact common to class members predominate over any questions affecting only individual members, and [ ] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The defendant has not opposed this portion of the motion, and the court agrees with the plaintiff that both aspects of Rule 23(b)(3) are satisfied here. *See, e.g.*, *Padilla v. Maersk Line, Ltd.*, 271 F.R.D. 444, 450 (S.D.N.Y. 2010) (finding predominance where "common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly predominate over" straightforward individualized determinations), *aff'd*, 721 F.3d 77 (2d Cir. 2013); *Lewis v. Alert Ambulette Serv. Corp.*, No. 11 Civ. 442, 2012 WL 170049, at *14 (E.D.N.Y. Jan. 19, 2012) (class action device particularly well-suited to situations involving plaintiffs allegedly injured by "a single policy of defendants . . . since many nearly identical litigations can be adjudicated in unison") (quoting *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006)).

      **D.    Appointment of Counsel**

      The defendant likewise has not objected to the appointment of the plaintiff's current counsel as class counsel. The court is satisfied with counsel's submissions attesting to their relevant experience, knowledge of the law, and resources, as well as the fact that they have handled this matter from the outset, all of which demonstrate their capacity to serve as class counsel. *See* Fed. R. Civ. P. 23(g)(1)(A). They should therefore be appointed to do so.

**V.    Notice**

      Having determined that plaintiff has satisfied the requirements for both conditional collective action certification under the FLSA and class action certification under Rule 23, the court now turns to the plaintiff's Proposed Notice of Lawsuit and Opportunity to Join

("Proposed Notice") and Consent to Become Party Plaintiff.[22]  As an initial matter, it is appropriate to combine notice of the collective action certification and class action certification in a single notice.  *See, e.g., Gortat*, 2010 WL 1423018, at *13.  The defendants do not argue otherwise.

As to the form of the notice proposed by the plaintiff, I note that the contents of the Proposed Notice are "accurate," "informative," *see Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989), and generally consistent with the model notices provided on the Federal Judicial Center's ("FJC") website, see www.fjc.gov (Class Action Notices page) (last visited August 26, 2015).  The defendants nonetheless have raised several arguments concerning various aspects of the Proposed Notice which are listed in a series of bullet points in their opposition.[23]  See Memorandum of Law in Opposition pp. 16-18 [Doc. No. 28].  "While the Court will permit reasonable amendments [to a collective action notice], those that are 'unduly argumentative, meant to discourage participation in the lawsuit, or are unnecessary or misleading' should be rejected."  *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (quoting *In re Milos Litig.*, No. 08 Civ. 6666, 2010 WL 199688, at *2 (S.D.N.Y. Jan. 11, 2010)).

Most of the defendants' proposed amendments lack any supporting authority and seek the addition of content that is absent from the FJC's model notices, not generally required by the courts, unnecessary, or inaccurate.  Accordingly, the court rejects the proposed edits contained in the defendants' first, fifth, seventh, eighth, ninth, tenth, twelfth, thirteenth, fourteenth, and sixteenth bullet points.  As the plaintiff has consented to the changes in the defendants' fourth, eleventh, and fifteenth bullet points, those should be incorporated into the Proposed Notice.  Similarly, regarding the second and third bullet points, the court recommends inclusion of the language to which the plaintiff has consented: "Peak Security denies the allegations in the Complaint and maintains that it properly paid its

---

[22] The Proposed Notice and Consent are attached as Exhibit B to the Certification of Douglas B. Lipsky [Dkt. No. 27].
[23] The defendants raise no objections concerning the Consent to Become Party Plaintiff. The court recommends that it be approved.

employees"; any further discussion regarding the impressions of Peak Security guards and supervisors (as proposed by the defendants) is improper.  Finally, the amendment suggested in the defendants' sixth bullet point should be adopted, as it mirrors information contained in the FJC's model notices.

Plaintiff has also requested that the court require Peak Security to post notice of the lawsuit at locations where putative collective action members work.  Defendants have not opposed this request, and "[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."  *Whitehorn*, 767 F. Supp. 2d at 449 (citing cases).  Accordingly, the court recommends granting this request.  Finally, plaintiff has sought production of a list (along with several pieces of identifying information) of security guards employed by Peak Security since January 28, 2007.  The substance of this request is appropriate, *see, e.g.*, *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 327 (S.D.N.Y. 2011) (citing "a number of courts in this circuit" that grant such requests in FLSA collective actions), *rev'd and remanded*, 533 F. App'x 11 (2d Cir. 2013), *abrogated by Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013), and has not been objected to by the defendants; accordingly, subject to the discussion that follows concerning the beginning of the notice period, the court recommends granting it.

One adjustment must be made to the notice as it relates to the FLSA claim, however. The notice proposed by the plaintiff describes the temporal scope of claims by potential opt-in plaintiffs as dating back three years from the filing of the complaint.  This is incorrect.  As noted earlier, the statute of limitations for FLSA claims is not tolled with the filing of the complaint, but rather continues to run until the order granting conditional certification is entered or is equitably tolled.  *See, e.g.*, *Ritz v. Mike Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013) ("[U]nder the FLSA, the notice period generally should be measured from the date of the court's order granting the motion for conditional certification, not from the date that the complaint was filed.") (citing *Hernandez v. Immortal Rise, Inc.*, No. 11 Civ. 4360, 2012 WL 4369746, at *6-7 (E.D.N.Y. Sept. 24, 2012)), *reconsideration denied*, No. 12 Civ. 367, 2013 WL 1968493 (E.D.N.Y. May 13, 2013); *Doucoure v.*

*Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 373 (E.D.N.Y. 2008) ("Any employee similarly situated to [named plaintiff] who worked for [defendant] within three years of the date of the notice should therefore be provided with notice of the instant lawsuit and of the opportunity to opt into it as a plaintiff."). In light of the recommendation above that the statute of limitations be tolled as of July 23, 2015, the period of time during which potential opt-in plaintiffs must have worked in order to assert FLSA claims should date from July 23, 2012 to the present rather than from January 28, 2010 to the present. Appropriate changes must therefore be made to the notice to reflect the July 23, 2012 start date for viable FLSA claims.[24]

Finally, plaintiff seeks to send notice of this lawsuit to all individuals employed as Peak Security guards since January 28, 2007 (*i.e.* six years before the filing of the lawsuit). Although the defendants argue that notice of the collective action should only be sent to those employees who worked for Peak Security in the two years before the date the notice is sent, they make that argument only in the event that a class action is not certified. In contrast to collective actions under the FLSA, the filing of a class action tolls the statute of limitations for all potential class members. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974); *accord, e.g., Sapon v. Cherry Hill Mkt. Corp.*, No. 10 CV 5616, 2014 WL 4794231, at *1 (E.D.N.Y. Sept. 25, 2014) (applicable to NYLL class actions). As claims under the NYLL enjoy a six-year limitations period, it is not only appropriate, but probably required, that notice be sent as requested by the plaintiff. *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring "best notice that is practicable under the circumstances" to class members for actions certified under Rule 23(b)(3)).

## CONCLUSION

For the foregoing reasons, I recommend that the defendants' motion be denied in its entirety. I further recommend that the court conditionally certify the plaintiff's proposed

---

[24] The July 23, 2012 date should be inserted in place of the January 28, 2010 date in the Summary on the first page of the notice, and in sections 4 (2 places), 9, and 12 in the body of the notice.

collective action under 29 U.S.C. § 216(b), authorize notice to be issued to putative collective members, and subject to the revisions set forth in Section III.D, *supra*, approve the plaintiffs' proposed Notice and Consent forms.  Finally, I recommend that the court grant the plaintiff's motion for class certification and appoint plaintiff's current counsel as class counsel.

    *     *     *     *     *     *     *     *     *     *     *     *

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2nd Cir. 2002); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.),*cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Respectfully Recommended**,

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:  Brooklyn, New York
      **[DATE]**