UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
**PAUL CHIME, Individually and on Behalf of All**            :
**Other Persons Similarly Situated,**                        :
                                                             :
                                                             :
                           Plaintiff,                        :
                                                             :  **MEMORANDUM AND ORDER**
                     - against -                             :
                                                             :  13 Civ. 470 (AMD) (PK)
                                                             :
**PEAK SECURITY PLUS, INC. and**                             :
**EMMANUEL OSULA, Jointly and Severally,**                   :
                                                             :
                           Defendants.                       :
                                                             :
------------------------------------------------------------ X

**ANN DONNELLY,** District Judge.

On June 1, 2016, the plaintiff moved, pursuant to Rule 23(d), for a protective order prohibiting the individual defendant, Emmanuel Osula, and his agents from directly or indirectly contacting any class or collective action member, and sought an order invalidating 55 exclusion requests.[1] After an evidentiary hearing on June 7, 2016, I denied the motion for a protective order and denied the request to invalidate the opt-out requests, with decision to follow. This opinion explains the reasons for that decision.

---

[1] The proposed order excepted communications with the defendants' current employees about issues unrelated to the litigation.

# BACKGROUND[2]

In August of 2013, the plaintiff submitted a letter to the Honorable William Kuntz requesting a pre-motion conference in anticipation of moving for a protective order.[3] In support of this request, the plaintiff said that Mr. Osula had called potential class members, yelled at them, accused them of collaborating with the plaintiff, and gave them a document to sign. (Aug. 8, 2013 Letter (ECF No. 17).) In response, the defendants filed the documents, which purported to be declarations opposing class certification, signed by current employees of Peak Security. The "declarations" were all similar, if not identical, and employed oddly formal and lawyerly language. As an example, many of the declarations read in part:

> I submit this Declaration in opposition to the Motion. As an initial matter, I was surprised, disappointed and upset that my name was referenced in the Motion and the supporting Declarations. I never authorized anyone to use my name in any of these materials. Indeed, I have no desire to be part of this action in any manner, and request that my name be stricken from any filings in this action and that the putative Plaintiff refrain from making any allegations on my behalf of this action.

(Decls. in Opp. at 5–6, 8–9, 11–12, 14–15, 17–18, 20–21, 23–24, 26–27, 29–30, Aug. 14, 2013 (ECF No. 18-1).) The declarations continued:

> More importantly, although I do not share the putative Plaintiff's audacity to purport to speak for each and every one of Peak's employee [sic] (past and present), based on my personal experience during the Employment Period I submit that the allegations contained in the Motion and supporting materials are categorically false.

*Id.*

---

[2] The background of the litigation is set out more fully in Magistrate Judge Viktor Pohorelsky's memorandum recommending that the Honorable William Kuntz grant the plaintiff's motion for conditional certification of a collective action with respect to the FLSA claims and grant the motion for class certification of the NYLL claims, as well as my subsequent opinion granting the plaintiff's motion to amend his complaint and denying the defendants leave to move to de-certify the collective action. *See Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183 (E.D.N.Y. 2015); (June 17, 2016 Mem. & Order (ECF No. 165).)

[3] This case was reassigned to Magistrate Judge Kuo from Magistrate Judge Pohorelsky in October of 2015, and was reassigned to me from Judge Kuntz in November of 2015.

Though not entirely clear from the docket, it seems that Judge Pohorelsky scheduled a hearing on the plaintiff's representations, but the dispute was overshadowed or made moot by the prior defense counsel's withdrawal from the case.

Thereafter, the parties submitted several rounds of briefing on the subjects of class certification and whether the complaint stated a claim upon which relief could be granted. In November of 2015, following the Court's decision denying the defendants' motion to dismiss and granting conditional certification of the collective action and class certification of the NYLL claims, the letter notice of the litigation was mailed to more than five hundred potential class members. Of that number, 55 people submitted class exclusion requests, and 26 people opted-in to the FLSA collective action.[4] The opt-in and opt-out notices were electronically filed with the court between December of 2015 and February of 2016.

In January of 2016, the plaintiff wrote to Magistrate Judge Peggy Kuo, again seeking a protective order under Rule 23(d) to prohibit the defendants and their agents from contacting the class and collective action members about the litigation, and requesting an order invalidating the exclusion requests. The plaintiff asserted that the Court could infer that potential class members had been coerced or harassed, because the individuals who submitted exclusion requests did so on identical forms, which included a blank space for them to write in their names. After oral argument, Judge Kuo denied the plaintiff's motion because she found that the only evidence of coercion was the large number of uniform exclusion requests mailed at the same time. However, Jude Kuo informed the parties that "as discovery proceeds, including depositions, any credible evidence of coercion by Defendants should be brought to the Court's attention." (Feb. 11, 2016 Docket Entry.)

---

[4] There have been conflicting reports regarding the number of opt-outs and opt-outs. The precise numbers do not change the outcome of this decision.

Discovery was scheduled to conclude on April 22, 2016. On April 1, 2016, the defendants sought an extension of the discovery deadline so that they could depose the 26 opt-in plaintiffs. Judge Kuo heard argument and granted the defendants' motion to the extent that the deadline for fact discovery was extended to April 29, 2016, so that the defendants could depose up to five opt-in plaintiffs. The defendants then filed a motion to compel discovery and a motion to vacate the trial dates. Thereafter, I extended the deadline for completion of discovery to June 1, 2016.

On June 1, 2016, the plaintiff filed another motion for a protective order. This request was occasioned by the defendants' alleged conduct following the May 31, 2016 deposition of class member Demilade Elutilo. The plaintiff represented that during this deposition, Mr. Elutilo testified that he now worked for a different security company, Kings Security.[5] According to the plaintiff, the owner of Kings Security contacted Mr. Elutilo forty-five minutes after the deposition, saying that he had received a telephone call describing the claims against Peak Security. The plaintiff argues that the "ineluctable conclusion is . . . that [Mr. Toni-Osagie], Individual Defendant Emmanuel Osula or someone at their direction called Kings Security with unlawful, retaliatory reasons." (June 1, 2016 Letter (ECF No. 150).)

In light of the plaintiff's submission and Judge Kuo's February of 2016 order instructing the parties to bring any additional credible evidence of coercion to the Court's intention, I raised the question of whether notice should be re-issued to the individuals who had excluded themselves from the class action. (June 2, 2016 Docket Entry.) I held an evidentiary hearing on June 7, 2016 to address the plaintiff's request for a protective order and to determine whether the

---

[5] Peak Security supervisor Ehigie Toni-Osagie was present at the deposition.

exclusion requests should be voided. On June 13, 2016, I denied the plaintiff's motion with opinion to follow.

## DISCUSSION

In overseeing a class action pursuant to Rule 23, the court may issue orders that "impose conditions on the representative parties or on intervenors." Fed. R. Civ. P. 23(d)(1)(C). The Supreme Court has opined that "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). However, this discretion is not unlimited. *Id.* A protective order restricting communication "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. That balancing "should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102. If improper contact occurred, the court can order curative action, including voiding improperly solicited opt outs and providing a new opportunity to opt out. *See, e.g.*, *Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 518 (E.D. Pa. 1995) (voiding exclusion requests because communications with potential class members "contained inaccuracies, misstatements, misrepresentations or omission that likely deceived class members into opting out").

In view of these standards, I held an evidentiary hearing to ascertain what had transpired, whether members of the class had been pressured or coerced as a result of the defendants' conduct, and whether a protective order or curative action was necessary. Three former employees of Peak Security, who are active class and collective action members, testified at the hearing. I credit the testimony of each of the plaintiff's witnesses in its entirety. A manager at

Peak Security, Ehigie Toni-Osagie, also testified for the defendants.  As explained further below, I do not find him to have been a credible witness.  Mr. Osula, the named individual defendant, was apparently out of the country, both at the time of the May 31, 2016 deposition and at the hearing regarding the requested protective order, and therefore did not testify.

Two of the defendants' former employees testified that someone from Peak Security contacted them about the case.  Specifically, Umar Abdulkhabir said that about two weeks after he received the notice letter, Mr. Osula telephoned him while he was at work.  Mr. Osula asked whether Mr. Abdulkhabir had received the notice.   Although Mr. Abdulkhabir had received the notice, he told Mr. Osula that he had not.  Mr. Osula said that the case involved two guards who had falsified records, and asked Mr. Abdulkhabir to write a letter saying that Peak Security was a great company.  He also told Mr. Abdulkhabir to notify him if he received the notice, and that he should not respond to it.  Mr. Abdulkhabir took no action in response to this call, but said that he was afraid of jeopardizing his status with the defendants.

Osagie Egharevba also testified that that he received a call from someone at the Peak Security office who said that the letter notice regarding the litigation was "stupid" and "fake."  This person asked him to come into the defendants' office to sign his name to be "off the list of whoever is suing."  The caller was not Mr. Osula, but Mr. Egharevba was otherwise unable to identify him.  He testified that the telephone call did not scare him, but that he was "kind of" intimidated.  Both he and Mr. Abdulkhabir opted in to the collective action.

While the details of these contacts are troubling, the evidence does not warrant judicial intervention at this time.  The plaintiff did not introduce any evidence that the individuals who excluded themselves from the class action did so as a result of the defendants' contact.  Instead,

6

both witnesses who described being contacted by the defendants or its agents opted in to the FLSA collective action.

In addition to being mailed, the notice was also posted in the lobby of Peak Security until January of 2016. Mr. Ehigie Toni-Osagie, a manager at Peak Security, testified for the defendants, and confirmed that this was the case.

Mr. Toni-Osagie also testified that someone from the company placed blank opt-out forms at the company Christmas party in 2015. While "really drunk that day," Mr. Toni-Osagie "visually recollect[ed] I think they were at sort of like on the reception table." He also recalled that he saw people filling out the forms at the Christmas party. Prodded, he then remembered that he questioned people to confirm that they had in fact filled out the form, but only "to make sure or just know that it was their handwriting." He had no recollection of speaking to employees about the substance of the lawsuit, other than to refer them to the letter notice on the lobby wall and to encourage them to go to their colleagues with any questions they might have. A day or two after the party, Mr. Toni-Osagie "saw the forms," then collected and mailed them, and even hand-addressed each envelope.

Mr. Toni-Osagie's testimony regarding these opt-out forms—about who created the blank form, what was said by Peak Security management about the form and to whom, when and how Peak Security employees filled their names in on the form, and how it came to be that Mr. Toni-Osagie found himself mailing the signed forms—was inconsistent, absurd at points, and frankly incredible. However, the plaintiff did not present any evidence that anything that happened, either at the Christmas party or otherwise, influenced any individual's decision about whether to opt-in to the collective action or opt-out of the class action. Nor did the plaintiff identify who created the form. Under these circumstances, I cannot weigh the need for a

limitation on the defendants' speech, nor can I narrowly issue an order imposing a restriction on communications.

The evidence regarding the post-deposition interference, while also troubling, was similarly thin. Mr. Elutilo testified that just forty-five minutes after his May 31, 2016 deposition concluded, his current boss from Kings Security called him, asked why the name of the company was mentioned at the deposition, and accused Mr. Elutilo of implicating Kings Security in the litigation against Peak Security. Mr. Elutilo did not know how his boss found out about the deposition, though he inferred that someone at Peak Security told him. Mr. Elutilo's boss from Kings Security did not appear at the evidentiary hearing. While the timing of this call and the specifics of its content certainly suggests involvement by someone connected to the defendant, there is simply not enough evidence to make that determination. Moreover, no individual has been identified as the caller, making it impossible to fashion an order. In short, the plaintiff did not introduce sufficient evidence from which I could infer that the defendants or their agents interfered with the class members.

## CONCLUSION

For the reasons set out above, the plaintiff's request for a protective order was denied. However, as the case proceeds, any credible evidence of coercion by the defendants should be brought to the Court's attention.

**SO ORDERED.**

                                          __s/ Ann M. Donnelly_____
                                          Ann M. Donnelly
                                          United States District Judge

Dated: Brooklyn, New York
       June 20, 2016